Mr. DeRamundo, I see you reserved two minutes for rebuttal and you can begin whenever you're  Thank you. May it please the Court, Michael P. DeRamundo for the respondents. This is an asylum case that was done across the street at 26 Federal Plaza. And I think the crux of this case is based on the credible fear interviews. There were two credible fear interviews that were done, one on August 8, 2012, which was about ten questions long and was aborted. And nobody at the hearing before Judge LaPrest talks about why it was aborted. And then two days later, on August 10, 2012, there's a de novo credible fear interview by a different officer, Officer Gutierrez, that's more in depth. And actually, in that second credible fear interview, and the credible fear interview- You don't have issues with the interpreter or any coercion in the second credible fear interview. Your issues with the first one, is that accurate? Judge Bianco, I do have issues with the interpreter in the second credible fear interview. Because at one point, the interpreter basically says to Mr. Bougie, stop, don't talk anymore. No, I thought that was the first interview. No, it's the second interview, actually. First interview was actually stopped because of the interpreter. And nobody at the individual hearing before Judge LaPrest talks about this. But in the second credible fear summary by Officer Gutierrez, I think it's at page 590, she basically says the first interview, the credible fear interview, was stopped because of a lack of interpreters. That Mr. Bougie didn't understand the interpreters. The second one, basically, and it's at the record at 209 to 210, Mr. Bougie actually says at the hearing that he was told, stop, shut your mouth, and stop there. And that was done by the interpreter. I'm confused. I'm sorry, I need to clarify the record here. When I'm looking at the transcript of the hearing, he's being asked about the first interview. And that's when he said, and I did not understand the interpreter. And the interpreter was saying, shut up, close your mouth when I say you speak. Then I got scared. My understanding is that was all in the context of 196 of the administrative record. But that was all in the context of the first interview. Am I getting things mixed up in my mind? And maybe I don't want to have you blow your time looking at that. But maybe before you rebut, you can go back and- Judge Robinson, I'll take a look at that. But it's my opinion that the first one was stopped. And there's no reason put in the record at all as to why the first credible fear interview was stopped at all. We understand that. I have the same confusion. I didn't see anything about the second interview that it got stopped at any point. It looked like it would be a fulsome interview, the second interview. And he was asked during the interview whether he had any problem understanding. He said, sometimes I need something repeated, but I understand. So I don't think there's any interpreter- So Judge Bianco, I agree, but I think Judge LaPress takes both credible fear interviews and just meshes them together. He doesn't- Well, that's a different problem. I don't disagree. But we're trying to figure out what you are saying happened. So the first interview, he testifies that it's cut off. And there's evidence. The report says interview stopped. And at that time, he does not express that he's got this fear of political reprisal, right?  And that failure to do that is used against him by the ALJ. Correct, Judge Murray. But in the second credible fear interview, which happens a few days later and is 47 questions or 70 questions or something, a fulsome interview, he does talk about the risk of political reprisal, right? Yes, he does. So it doesn't make sense that his testimony saying, every time I tried to talk about politics, the interpreter cut me off, that can't be talking about the second interview. It's got to be talking about the first interview, right? I agree, but it's confusing because it's not distinguished in the testimony. He just says at one point, I was told to stop. And Judge LaPress doesn't do any follow-up questions, and neither does the Assistant Chief Counsel for DHS, as to why that occurred. And he sort of meshes, I think, the two credible fear interviews together. He then, Judge LaPress then uses the first credible fear interview, which he says, I'm afraid to go back because of the mafia. And he uses that to basically impeach him and find an adverse credibility. I think, ramshamashir, basically the four factors that have been set out by this court in that case are really the ones that have to be looked at. And- Let me ask you a couple of things. Because the first interview, let's assume it was cut short. But there were a couple of things about that interview. First is your client did mention the word it's the – it was the mafia. There was a back-and-forth in the notes of several more details about why he was in fear of the mafia. And then he was asked after that explanation about they took steel, they took metal, they threatened him. Why did you tell the border patrol that you have a problem with the Democratic Party? And he says, I came with other guys. I did not say that, so I don't know. And then it was cut. But at the second interview, the interviewing officer goes over those notes with your client and asks him if there's anything he wants to correct. He corrects whether he was a private guard or a police guard but doesn't correct anything else with respect to that first statement. So, first of all, why isn't that a problem? Why can't an IJ say – even if that interview was cut short, he said it was the mafia in the first interview. He gave details of why it was the mafia. He was shown that report by a second officer where there was no interpreter issues, and he didn't correct that. Judge Bianco, I think it's a problem under Ram Sammichia because the second factor in that case was whether or not there's a question asked that will elicit problems of persecution, why the person was afraid to go back to the home country for one of the five reasons for asylum. That wasn't the case here. The first officer, Smith, says, what were the reasons why you left Albania? It's really not a question to elicit the reasons for fear of returning to Albania at all. And then he stopped right after he talks about the problems with the fact that he was an officer there, a security guard. Why did you tell the border patrol that you had a problem with the Democratic Party? He says, I came with other guys and did not say this. So he didn't ask if that's accurate. That's what he asked them. It's particular about political persecution, why he left, right? But then there's no further questions at that point, and that interview is actually stopped. And Officer Gutierrez, if you look at the record at page 590, actually says in her summary, the first interview is stopped because of interpretation problems. And Judge LaPrest never talks about that, neither does the District Counsel for, the Assistant District Counsel for- What about the fact that in the second interview, there were a number of inconsistencies or omissions that the IJ relied upon? But again, I don't think there's an issue about how that interview was conducted. Let me see what your response is to this. He talked in great detail at the hearing, exhaustive detail, I would say, about the socialist strongman Sturkaj, who was at the source of his fear in Albania. And the IJ noted that there's, I think, virtually no mention of Sturkaj at all in the second interview, certainly not in the first interview, but not even in the second interview. So isn't that something the IJ could say? If that was the basis for the fear, why would he have mentioned that? I think that's one of the reasons also. But then Judge LaPrest also uses the wife Liliana's testimony against him when that was rushed. And if you look at the transcript, basically, you'll see that it's 3.30 in the afternoon, the interpreter has to catch a flight, and the judge basically says to both parties, let's rush this, let's do this fast. And then Liliana doesn't really testify at length about the problems or the fact that she was almost abducted and going to be sold into prostitution, and that's used against him as far as an adverse credibility finding when the whole part of it was to rush them through to get done with the hearing on that day. What about that he mentioned in the February 2011 arrest, in the hearing he says that they threatened to kill my family and my children if I didn't vote for Sturkaj. And in the credible fear interview, the second one, there's no mention of any threat to his family or children. That's a pretty significant thing. In a credible fear interview, it's not a minor thing whether or not your family was threatened to death by the police. And it wasn't mentioned at all, even in the context of the secondary. But his testimony at the hearing is pretty consistent overall with his asylum application. And the credible fear interview is only to see if there's a reasonable possibility that there will be persecution in the home country. It doesn't bring out all of the factors. But there are significant details that are inconsistent or omitted. That's what goes on all the time, you know that. Those are bases under the law for which can be rejected, even if the overall story would be something you could get relief on, right? Yes, Judge. But also, Judge LaPress basically says that this was a verbatim transcript. If you look at the certified record of page 67, Judge LaPress basically believes that there was a verbatim transcript in his decision of the credible fear. And that's not the case. And it's not even in good language or good English, basically, some of the questions. They're questions and answers sometimes. And I would also pose to the court that I've done about 25 of these credible fear interviews. Some of them are cut off very early, because if an officer feels you have made out a reasonable possibility, they stop it. So what if there are three or four arrests in a credible fear interview, and you only talk about one, and the officer says, okay, I find enough. You passed. You got to go to an immigration judge. Can the other two or three arrests that were never discussed in the credible fear then be used to- What I gave you was he talked about that arrest. He didn't leave out that arrest. I understand your point, two versus three arrests. But when you talk about an arrest, you leave out the fact that your family was threatened to death. That's- Well, he doesn't specifically talk about Stokkeye. I agree with you, Your Honor. I don't think that's a significant omission. But Lilliana talks about the fact that she was almost abducted, and then there was a fear of the fact of going back because of the Socialist Party, and that Stokkeye had jumped parties from Socialist to Democrat, and also that many of- When he talks about mafia, mafia are the criminals that are basically used by the Socialist Party. So, again, that's not discussed by the judge in his decision. Yes, there are some omissions. There's no doubt about that. But overall, Mr. Bougie's testimony is pretty consistent with his asylum application, and if you look at the four factors of ransom and cheer, I think he makes out most of them. And also, factor number three is whether or not he would be reluctant to talk about his fear. Clearly, in the first interview, that was the case, and there's an interpretation problem. And when you look at the questions that are asked in the first interview, what was the reason why you left Albania, it's not really a reason about your fear of returning to Albania, and there are no further questions asked about that. So, I think basically, based on ransom and cheer, he makes out three of the four considerations that this court has talked about. And these are very loose interviews that are done, the credible fear, and usually very quickly. But Judge LaPresse uses the first one, really, to impeach him and to find an adverse credibility finding. Can I ask you, the government points out that the agency also said it fails for lack of corroboration, and that wasn't raised before the BIA, and I looked back at your brief, and you don't seem to be challenging. There was nothing about that. Isn't that problematic? There was plenty of corroboration, Your Honor. I think the case really rested upon the adverse credibility finding, because the immigration judge didn't believe him, so then everything fell from that point of view. So, I think everything really falls on whether or not he was correct in using the two credible fear interviews to find the adverse credibility. And I would say that the credible fear interviews are basically unreliable. There's no verbatim transcript. And the fact is that it was used against him when he was very, very clear about what the persecution was in the second credible fear, and it was fairly consistent with his asylum application and his testimony. And Lilliana didn't really get the chance to testify fully about any of this, because she was cut off. You know? All right. All right. Thank you. We don't have time for rebuttal. We'll hear from the government. Mr. Robbins? May it please the court. My name is Jonathan Robbins, and I'm here on behalf of Merrick Garland, the Attorney General. A good morning to all of you. As you've just discussed with my colleague, the primary question before the court today is whether the record compels reversal of the agency's adverse credibility finding. And the answer to that question is no, and that is because the evidence has, there's quite a bit of substantial evidence in this record to support the adverse credibility finding. If we conclude that, yes, there would be sufficient evidence to support an adverse credibility finding, but that the most critical piece that the IJ relied on, namely the inconsistency with the first credible fear interview, wasn't supported by the record for whatever reason, is it your view that the sufficiency of the remaining inconsistencies, if in fact they are sufficient, would support denying relief, or is the standard that we ask ourselves whether we're reasonably confident that the IJ would have come to the same conclusion, even without the problematic finding? Under the substantial evidence standard, I think the appropriate thing for the court to do is look to see whether there's substantial evidence in the record to support it. Even if a significant part of the reasoning is error? Yes, I mean, if the court essentially were to say that that was harmless because there's other evidence in the record that supports the adverse credibility finding, yes, I think that's the appropriate way to assess it under the standard of review. But I think Your Honor is getting to maybe a question about whether the immigration judge should have relied on the initial credible fear interview, and I want to discuss that because I think the court can rely on that. Now, I know that it is slightly irregular that the interview was stopped and then it continued two days later, and we don't really know exactly why that was from the record, but we do know that the petitioner was questioned about that interview in the hearing before the immigration judge, and this claim now that he's saying about interpretation problems, he does allege that there was a problem with the interpreter, but he also admits to the immigration judge that what is memorialized in that document is what he said. He acknowledges that he told the story about the mafia, and more than that, he doesn't just acknowledge that, he acknowledges that that wasn't true. So he admits to the immigration judge that he said that. Where is that? That's in page 199 of the record. This is the question. I'm asking you what you told the asylum officer during that interview. Was that the truth or not the truth? Mr. Bujaj answered no. On the next page, it says, okay, let me ask you this way. Truth or not the truth? Were you threatened by the mafia, yes or no? No. So he admits that he gave this mafia story. So there's really no reason for the immigration judge not to have relied on that document. He confirmed that that's what he said during that interview. Can I shift to, because actually I had in mind a different one of the findings. Oh, I'm sorry. No, that's fine. That's the big one. That's the big one. But the omission of the second instance of abuse, and the court relied or the IJ relied on that in part as an additional inconsistency by omission. And when you go back and you look at the interview, the interviewer says, how many times were you mistreated? He says three times. So he puts a stake in the ground. There are three things that are relevant to my claim. One was the first time you were mistreated. He then describes that in great detail. They go back and forth on that. Then the interviewer said, when was the last time you were harmed? And he described that being the third time. So there's never an opportunity in the flow of the interview to offer the second. The interviewer is guiding them back and forth. Is it your view that it's proper to rely on the omission of the second when he's established that there are three things? And he's been asked by the first and the third, and then the interviewer takes him in a different direction? I mean, I agree with you when you look at that record. That is certainly a weaker inconsistency, because you're right, the flow of the interview. He was asked when was he last threatened, and so it got sort of skipped in the interview. These interviews, at the end of the interviews, usually there's an opportunity to say, is there anything else you think that's important? So if there's a significant type of harm, you would think that that would be something that would be raised in that part of the interview. I understand that it doesn't necessarily flow with the interview. I'll grant you it's certainly a weaker inconsistency. If it was just based on that alone, that wouldn't be enough. But when you compare it with some of the really big inconsistencies, I mean, the petitioner has all but admitted, I mean, he did admit that the very first thing he told an asylum officer in a credible fear interview wasn't true. And, by the way, his wife was sequestered during that testimony. When she came in, she didn't realize that he had made that admission, and her testimony continued as though that part of the story was true. So, I mean, there's certainly enough red flags on this record for an immigration judge or for any reasonable fact finder to reasonably question the credibility of this claim. And for that reason, the court should leave the agency decisions undisturbed. There is one issue that went undiscussed. I don't think there's really much to say about it. There's the issue that the petitioner is making about whether jurisdiction properly vested with the immigration court in the first place due to deficiencies in the notice to appear. That issue is foreclosed by precedent. The court already resolved it in Sherry. Unless the court has any questions about that, I'm happy to discuss them. But other than that, I think the precedent would resolve that particular issue. So if the court, yes. Let me ask you about, so I know how the caseload of these ALJs, and in not just this context, immigration, Social Security, these folks are forced to turn out a huge number of decisions very quickly. And so we do overlook a lot of sort of technical issues. But here, as your colleague alluded to, there seems to be a fair amount of confusion by the ALJ about the first versus the second credible fear interview. And so he says, well, it was signed and initialed. But it wasn't. He says, he confirmed that he understood the interpreter. I don't think he did. There's a real conflation there. At some point, it becomes very difficult to really know what the basis of the ALJ's decision was in this case and whether we can rely on it. So is it your position that as long as we can find some piece that supports this, sort of what Judge Robinson was talking about, something that would support the adverse credibility finding, we should set aside the question of whether the ALJ sort of had a level of confusion that rises in this case. And it's a confusing case. We all had it, too. But it did need to be parsed, I think, because there are two separate interviews. In that first one, when we're evaluating the addition of reliability, I think the ALJ got some of that wrong. So what do we do with that? Should we just set that aside and look at the other issues? Or should we sort of confront that and say, you know what, this is something that in the first instance needs to be looked at again by the agency? I think there's enough here that was done right that supports the adverse credibility finding. You know, there's not much point in remanding a case if your honors are of the view that the adverse credibility finding wouldn't change. And I do think there's enough red flags on credibility in this case to support that. Now, I want to be clear. Even though the workload is big, the immigration judge did give this a lot more time than the average case. That's clear. Yeah. I mean, it was a written decision, a lengthy written decision, very thorough decision. It's clear that he had gone through the record. I'm not entirely sure that he actually confused the different credible fear interviews. Well, Frick, doesn't he say it was signed? He does. Is it signed? In the record, we have copies, and sometimes things don't appear on copies. Don't we have the same copies he had, though? Well, I'm not entirely sure. I didn't see any initials on it either. But I think that the point that the immigration judge was making when he was talking about this, and my colleague mentioned that he said that it was verbatim. What he said was the responses appeared to be verbatim from the document that indicates the credible fear notes. And the point that he was making is this isn't a summary, right? But the problems that the courts have had with respect to credible fear interviews is when there's only a summary, and it doesn't have the question and answers laid out. And so in those situations, it's more difficult to rely on those credible fear notes. So if you look at what the immigration judge was talking about in the context, I think that's the point that the immigration judge was trying to make. So the form says it's a summary, right? Yes. But there's also written notes on page ‑‑ let me pull it up here. It's page ‑‑ it starts on page 517 of the record. These are the interview notes according to ‑‑ and this is a question and answer format of what happened at that second interview. Well, it's framed that way. Well, it's more than just framed. I mean, it appears to have the questions and the answers from the interview. Well, the question is fear? And the answer is yes. What will happen? I do not know that they know that this. It's hard to see this. For example, in the middle of the supposed question and answer, the structure is certainly question and answer, but it says AO reviewed previous notes. I mean, I've done that, right, in a question to sort of summarize the questions and answers instead of summarizing them in narrative form. Do we really know whether this is a verbatim? It doesn't look verbatim, I guess I would say. That's fair, but it also is a ‑‑ there's also a lot of ‑‑ certainly these are the types of notes that in the past the courts and the immigration judges and the courts have upheld the immigration judge relying on these notes as memorializing the answers that have been given to particular questions. Now, you know, Petitioner hasn't really disputed that this interview is a proper account of what actually happened at the second interview. So, I mean, he's basically arguing that ‑‑ The first or the second? This is the second interview, the one that I'm pointing out. And again, he admitted that what happened in the first interview also happened. He admitted that before the immigration judge, so he's not even really disputing the content of that one either. He's making this argument about the interpreter belatedly, but that's after he already admitted that he did say these things. And so for that reason, the evidence does support a credibility, an adverse credibility finding in this case. I want to go back to the standard because I now have a chance to up on Westlaw and pull up the case that I had in mind. Sure. And it's Zhao Jishen, excuse my pronunciation, it's 434 F3rd 144. And it basically deals with this question of what do we do if we find some error by the IJ? And at least to my read, the thrust is that if it's a minor enough error that it doesn't affect the IJ, we can confidently conclude that it didn't affect the IJ's conclusion, then we don't have to remand. But unless we conclude it would be pointless, we do have to remand. And that's different from whether there would have been substantial evidence to support the no credibility finding absent the erroneous finding, right? And so I'm just wondering whether your position is that that's not actually our law. No, no, no. It's your law. I think you can uncover different cases where the courts have done different things. And I think you're right that it's sort of a nuanced line. I don't know that it's been framed this way, but it appears to be akin to harmless error review, right? If the court is confident that what was relied on really didn't affect the case, and it's confident that the credibility finding would stand, then it usually determines that substantial evidence supports the agency's conclusion. If it's something big, I mean, I don't think- So if, and I'm not saying that we, I mean, I've heard your arguments about credible fear interview number one. And so let's just assume for a minute. If we thought the court got it wrong in that and shouldn't have relied in any way on statements made in that credible fear interview, and we concluded that that was the centerpiece of the court's reasoning, that might compel us to remand where we wouldn't if we thought that the beating on the bottom of the soles of the feet wasn't really an omission that warranted, that was proper. Am I- It's a close question because maybe the beatings of the feet one wouldn't be enough, but not mentioning Sturkage in the interview. That's a pretty big thing not to mention. Well, but he talks about the parties and the splitting off. He doesn't use the name Sturkage, but he talks about that sort of phenomenon without using the name, doesn't he? Right, but the immigration judge made the point. This is an individual that featured very prominently in his testimony before the judge. And in his written asylum application. Yes. It would ultimately be a determination as to what the court thought of how important that particular credibility finding was, that particular aspect or pillar of the adverse credibility finding was. If you knocked out the first credible fear interview and what he said and what he admitted to saying there, and you knock that out, it would be a very close question. But it probably wouldn't be harmless in that situation. If you knocked out that and the other things that you said you would also knock out. That would probably be knocking out too many pillars for it not to warrant a remand. But, again, petitioner made some very serious admissions about that first interview. Right, no, he says in his hearing testimony that I didn't tell the truth. And he confirms that he said it. So there's really no reason not to rely on that interview. So, I see I'm way over time unless the court has any questions. Thank you. Thank you very much for your time, Marilyn. Just to point out that the immigration judge does say at the certified record of page 67, those documents present a verbatim record of Bougie's responses, not a mere summary of his statements. So the immigration judge really believed it was a verbatim statement, and it wasn't. As far as what counsel states as him saying that he didn't tell the truth, it's not really accurate. It's at the certified record of page 199, the government attorney says, I'm asking you what you told the asylum officer during the interview. Was that the truth or not the truth? And Mr. Bougie says, no. Ms. Torellis, not the truth? No, that wasn't the truth because I didn't leave for that reason. But I was afraid that they were going to send me back, and I was very stressed out. So he's not saying that he didn't say he was afraid to go back because of the mafia. He was saying it really wasn't the reason. It was the three arrests, really, when he gets to the hearing. But he's not saying it was an interpreter problem that he didn't say. No, not at that point, Judge Bianco. I agree. Not at that point. Okay? But the first one is clearly knocked out because of the fact that it's – I've never seen two credible fear interviews like this back to back in two days. And the second one is de novo. And Officer Gutierrez basically says the first one is not valid because there were interpreter problems. And, again, not discussed by the judge, the immigration judge at all, but takes the things that were said in that first credible fear to be held against him. But, I mean, the – it feels like this would be a very different case if he came into the hearing and said, look, I didn't understand myself to be saying that or an explanation. Yeah, to the extent I was talking about the mafia in the first interview, it's because I thought that his question was, why did you quit your job? Or, you know, something – he doesn't refer back to those statements by either saying, no, he must have been mistranscribed or misinterpreted or didn't understand the question. He basically says, yeah, I said that. I said that I was afraid that they were going to send me back. My life was in danger. I said that about the mafia. No, it wasn't true. Doesn't that testimony in the IJ hearing essentially wash out whatever problems we might have otherwise inferred from the first credible fear interview? Because now he's got a good interpreter. He's got counsel. He's in the non-coercive environment. And he's still saying, yeah, I said – I did say those things and they weren't true. I read it differently, Judge Robinson. I just read it totally differently. I don't think he's saying that. And I think that basically he was an officer and he did do those things. And that is part of his fear possibly. Clearly it's the political part that really is the main thrust of it. But he clearly had some fear. There's no – Let me ask you this way. Truth or not the truth. Were you threatened by the mafia, yes or no? Mr. Bujaj, no. Yes, Your Honor. But in his mind, he may feel that he would be threatened by going back. And if there was an expert on country conditions here, you would hear that there are criminal aspects to the government there. There are very, very bad incidents of violence in the Albanian elections. Last election last year there were 67 violent incidents in that election all the time. And basically they do have a fear that they will be injured. So I think that if you take the totality of the circumstances, the fact that he did arrest certain people and this was his job, but then he goes and he was arrested three times for political reasons, it's the totality of the circumstances. What he felt was the fear of returning to Albania. I think if you knock out the first credible fear interview, though, I think that it changes everything and I think there is some doubt there. And when I read all this, I didn't litigate this below, but when I read all this, to me, the immigration judge just took the two credible fear and put them together. There also was a border interview, which is what counsel talked about, which is more a question than answers, and that's not even a verbatim transcript. But Judge LaPresse doesn't use the border one. He uses the two credible fear ones. Well, there's some doubt in the border one as to whether or not he's the one who actually made the statements, right? So it would make sense not to try to hang anything on that. Yes. So, I mean, the second officer literally says there is a problem. There was a problem with the first credible fear. I see there may have been some inconsistencies, but I see enough here that I'm going to pass this to go to an immigration judge for a full asylum case. I would say that it's a totally different aspect if you knock out the first credible fear, and it is confusing, and the fact that the judge thought it was a verbatim transcript. I would ask that you remand this back so that it could be clarified before the judge, and I think if the first one gets knocked out, I think it's a completely different case when it goes back before Judge LaPresse. Thank you for your time. Thank you. Thank you to both of you. Excellent job by both of you. Thank you. That was very helpful. We're going to put it as a reserved decision.